IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK ALLEN NICHOLSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-725 |
| | ) Chief Judge Gary L. Lancaster |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER OF COURT

Gary L. Lancaster
Chief Judge                                July 22, 2011

I.  Introduction

Plaintiff Mark Allen Nicholson ("Nicholson") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. For the reasons that follow, the decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings.

II.  Procedural History

Nicholson protectively applied for disability insurance benefits on September 13, 2006, alleging disability as of August 1, 2006. (R. at 81, 99). The application was administratively

1

denied on November 30, 2006. (R. at 58). Nicholson responded on December 15, 2006, by filing a timely request for an administrative hearing. (R. at 64). On March 5, 2008, a hearing was held in Morgantown, West Virginia, before Administrative Law Judge George A. Mills, III (the "ALJ"). (R. at 21). Nicholson, who was represented by counsel, appeared and testified at the hearing. (R. at 26-47). Dr. Larry Ostrowski, an impartial vocational expert, also testified at the hearing. (R. at 47-54). In a decision dated April 1, 2008, the ALJ determined that Nicholson was not "disabled" within the meaning of the Act. (R. at 9-20). The Appeals Council denied Nicholson's request for review on April 9, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1). Nicholson commenced this action on May 25, 2010, seeking judicial review of the Commissioner's decision. (ECF Nos. 1 & 3). Nicholson and the Commissioner filed motions for summary judgment on September 23, 2010, and October 25, 2010, respectively. (ECF Nos. 9 & 11). These motions are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining

whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month

3

period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within

4

the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91

5

L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV. The ALJ's Decision**

In his decision, the ALJ determined that Nicholson had not engaged in substantial gainful activity subsequent to his alleged onset date. (R. at 14). Nicholson was found to be suffering from mild degenerative disc disease of the lumbar spine without evidence of herniation, central spinal or foraminal compromise, mild degenerative arthritis of the lumbar spine with scoliosis of fifteen degrees to the right, mild

6

obesity, the residuals of three hernia surgeries, hypertension, and gastroesophageal reflux disease ("GERD"). (R. at 14-15). Although his hypertension and GERD were deemed to be "non-severe," his remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii). (R. at 14-15). The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15).

In accordance with 20 C.F.R. § 404.1545, the ALJ determined that Nicholson had the residual functional capacity to perform a range of "light"[1] work providing him with a sit/stand option, involving only "limited" pushing and pulling with leg or foot controls (consistent with the weight limits applicable to light work), and requiring only occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 15). Nicholson had "past relevant work"[2] experience as a store laborer and small products assembler. (R. at 47-48). Dr. Ostrowski

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the previous fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. § 404.1560(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. § 404.1571-404.1576.

7

classified Nicholson's store laborer position as a "medium"[3] job and testified that an individual needing a sit/stand option could not work as a small products assembler. (R. at 47-50). Therefore, it was determined that Nicholson could not return to his past relevant work. (R. at 18).

Nicholson was born on March 6, 1964, making him forty-two years old on his alleged onset date and forty-four years old on the date of the ALJ's decision. (R. at 18, 26). He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 404.1563(c). He had a "limited education"[4] and an ability to communicate in English. (R. at 28, 102, 109); 20 C.F.R. § 404.1564(b)(3), (5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Nicholson could work as a mail clerk, a sewing machine operator, a parking lot attendant, a document preparer, a table worker, or an ampoule sealer. (R. at 19). Dr. Ostrowski's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A).[5] (R. at 51-52).

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[4] Nicholson testified that he had dropped out of school after completing the ninth grade. (R. at 28).

[5] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).

## V. Discussion

Nicholson takes issue with the ALJ's evaluation of the opinions rendered by several of his treating physicians. (ECF No. 10 at 9-11). He contends that the ALJ erred not only in failing to credit the opinions of his treating physicians, but also in failing to adequately consider his subjective complaints of disabling pain. (*Id.* at 11-13). These arguments can only be understood by reference to the various assessments provided by medical sources.

Dr. Mohammed M. Zaitoon, a urologist, opined on October 5, 2006, that Nicholson had no physical restrictions that were attributable to a urological impairment. (R. at 174-175). Dr. Victor Jabbour is Nicholson's primary care physician. (R. at 36). On October 6, 2006, Dr. Jabbour completed a "medical source statement" form detailing Nicholson's physical limitations. (R. at 178-179). Dr. Jabbour reported that Nicholson could frequently lift or carry objects weighing up to three pounds and occasionally lift or carry objects weighing up to ten pounds. (R. at 178). He indicated that Nicholson could only stand or walk for one hour (or less) and sit for "less than" six hours during the course of an eight-hour workday, and that he was limited to only occasional bending, kneeling,

---

This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

9

stooping, crouching, balancing and climbing. (R. at 178-179). Dr. Jabbour further suggested that Nicholson needed to limit his exposure to heights, moving machinery, vibration, temperature extremes and humidity. (R. at 179).

Dr. Muna Jabbour[6] performed a consultative physical examination of Nicholson on November 13, 2006. (R. at 196-200). Based on her examination findings, Dr. Muna Jabbour reported that Nicholson could frequently lift or carry objects weighing up to ten pounds, occasionally lift objects weighing up to twenty-five pounds, and occasionally carry objects weighing up to twenty pounds. (R. at 199). She indicated that Nicholson could stand or walk for more than two hours but less than six hours, and sit for up to six hours, during the course of an eight-hour workday. (R. at 199). She further opined that Nicholson was limited in his abilities to push and pull with his upper and lower extremities, and that he was limited to only occasional bending, kneeling, stooping, crouching, balancing and climbing. (R. at 199-200). Harry Henry ("Henry"), a nonexamining medical consultant, reported on November 27, 2006, that Nicholson could engage in an unlimited range of light work activities. (R. at 201-207).

---

[6]Nicholson testified that the consultative examiner, Dr. Muna Jabbour, was the wife of his primary care physician, Dr. Victor Jabbour. (R. at 49).

10

Dr. Kuk S. Lee, a treating pain management specialist, completed a questionnaire describing Nicholson's physical limitations on January 28, 2007. (R. at 240-243). Dr. Lee indicated that Nicholson could sit for only three hours and stand or walk for only two hours during the course of an eight-hour workday. (R. at 240). Dr. Lee reported that Nicholson could frequently lift objects weighing up to five pounds and occasionally lift objects weighing up to ten pounds, that he could not use his feet for repetitive movements (such as the pushing or pulling of leg controls), and that he was limited to only occasional bending, stooping, crawling, climbing, balancing, crouching and kneeling. (R. at 241). Dr. Lee also stated that Nicholson needed "[c]omplete freedom to rest frequently throughout the day," and that his condition was permanent. (R. at 242).

Dr. Timothy Rumbaugh, a treating chiropractor, opined on November 29, 2007, that Nicholson could sit, stand or walk for only three hours during the course of an eight-hour workday. (R. at 226). He reported that Nicholson needed to "alternate positions frequently" in order to alleviate pain in his lower back. (R. at 226). Dr. Rumbaugh indicated that Nicholson was absolutely precluded from bending and climbing, and that he could engage in only occasional stooping, crawling, crouching and kneeling. (R. at 227). Dr. Rumbaugh stated that Nicholson

11

could "never" lift more than five pounds, and that he needed "[c]omplete freedom to rest frequently throughout the day." (R. at 228). Although Dr. Rumbaugh characterized Nicholson's disabling condition as temporary, he predicted that it would last for more than one year.[7] (R. at 228).

The ALJ asked Dr. Ostrowski a series of hypothetical questions based on the assessments contained in the record. (R. at 47-54). In response to questions based on the assessments provided by Nicholson's treating sources, Dr. Ostrowski testified that an individual with the limitations described in those assessments could not perform the duties of any job existing in significant numbers in the regional or national economy. (R. at 52-54). Dr. Ostrowski identified the mail clerk, sewing machine operator, parking lot attendant, document preparer, table worker and ampoule sealer positions later relied upon by the ALJ in response to a question based on the limitations identified in the examination report prepared by Dr. Muna Jabbour. (R. at 49-52). Nicholson argues that the ALJ erred in crediting the report of a one-time consultative examiner over the reports submitted by his treating physicians. (ECF No. 10 at 10-11). The crux of his argument is that the ALJ should have credited the vocational expert testimony responding

---

[7] Dr. Rumbaugh's prediction concerning the duration of Nicholson's medical condition is significant because of the Act's one-year durational requirement. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002).

to the hypothetical questions based on the reports provided by treating sources rather than on the testimony responding to the question based on Dr. Muna Jabbour's examination report. (*Id.* at 6-11). The Commissioner contends that the ALJ properly relied on Dr. Muna Jabbour's findings in determining that Nicholson could engage in substantial gainful activity. (ECF No. 12 at 11-12).

In evaluating the medical evidence contained in the record, the ALJ was "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). The problem in this case, however, is that the ALJ did not fully account for the medical opinion that he purported to credit. The ALJ stated in his opinion that he found Dr. Muna Jabbour's examination report to be credible except with respect to the finding that Nicholson was "limited" in his abilities to push and pull with his upper extremities. (R. at 17). Explaining the rationale for his residual functional capacity determination, the ALJ declared:

> Considering the credible evidence of record, which consists essentially of the objective medical evidence and the residual functional capacity assessment completed by Dr. Muna Jabbour, it is the opinion of the Administrative Law Judge that the claimant has the residual functional capacity to lift 10 pounds frequently and 25 pounds occasionally, carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk for more than two hours but less than six hours in an eight-hour day and sit for six hours in an eight-hour day; occasionally climb, balance, stoop,

13

>     kneel, crouch and crawl; and has limited ability to
>     push or pull leg controls, to the weight limits; [sic]
>     Therefore, the claimant has the residual functional
>     capacity for less than the full range of light work,
>     accommodated with a sit/stand option at the
>     workstation, and the full range of sedentary work.

(R. at 18). The ALJ went on to find that Nicholson was not precluded from performing the duties of the jobs identified by Dr. Ostrowski. (R. at 19).

A careful reading of the hearing transcript reveals that the ALJ's hypothetical question to Dr. Ostrowski did not fully correspond with Dr. Muna Jabbour's examination report. The ALJ's hypothetical question accounted only for the lifting, carrying, standing, walking and sitting limitations found by Dr. Muna Jabbour. (R. at 49-51). It included no references to the postural, pushing and pulling limitations contained in the examination report. (R. at 49-51, 199-200). Among the limitations reported by Dr. Muna Jabbour, the ALJ rejected only the limitation in Nicholson's abilities to push and pull with his upper extremities. (R. at 17, 199). The ALJ specifically determined that Nicholson was limited in his abilities to push and pull leg controls, and that he was limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 15, 18). These limitations were not included in the hypothetical question used to elicit Dr. Ostrowski's testimony concerning the jobs later relied upon by

14

the ALJ to deny Nicholson's application for disability insurance benefits. (R. at 19, 49-52). Instead, they were only included in the ALJ's subsequent hypothetical questions, which reflected the findings of Nicholson's treating physicians. (R. at 52-54).

The United States Court of Appeals for the Third Circuit has held that a vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony adequately conveys all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is omitted from an administrative law judge's hypothetical question to a vocational expert, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Because the ALJ's hypothetical question was underinclusive when viewed in relation to both his residual functional capacity finding and Dr. Muna Jabbour's examination report, Dr. Ostrowski's testimony did not satisfy the Commissioner's burden of establishing the existence of jobs in the national economy consistent with Nicholson's work-related abilities and limitations. *Id.* This remains the case even if it is assumed that the ALJ did not err in crediting Dr. Muna

15

Jabbour's examination findings over the assessments supplied by Nicholson's treating healthcare providers.

It is not clear why the ALJ rejected Dr. Muna Jabbour's finding that Nicholson was limited in his abilities to push and pull with his upper extremities. The ALJ stated that he could find no basis in the "objective medical evidence" for that limitation. (R. at 17). Dr. Selim El-Attrache, Nicholson's treating orthopedic surgeon, specifically advised Nicholson to avoid pushing or pulling objects weighing more than fifty pounds on August 10, 2006. (R. at 169). Dr. Victor Jabbour indicated that Nicholson's pushing and pulling limitations were fully incorporated within his lifting and carrying limitations. (R. at 178). Nevertheless, Dr. Victor Jabbour reported that Nicholson could frequently lift or carry objects weighing up to three pounds and occasionally lift or carry objects weighing up to ten pounds. (R. at 178). In light of the fact that Dr. Victor Jabbour's findings were actually more restrictive than Dr. Muna Jabbour's findings, it is not clear that Dr. Victor Jabbour's assessment provided the ALJ with a legitimate basis for rejecting Dr. Muna Jabbour's determination that Nicholson's upper-extremity pushing and pulling abilities were limited. (R. at 17, 178, 199). To the extent that the two reports were in conflict with respect to that issue, the ALJ was still required

16

to explain why he chose to credit one over the other. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003).

For the foregoing reasons, the Commissioner's final decision cannot stand. The only remaining question is whether a judicially-ordered award of benefits is warranted, or whether the proper remedy is a remand for further administrative proceedings. "An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard is not satisfied in this case.

It is unclear whether the limitations found by the ALJ but omitted from his hypothetical question to Dr. Ostrowski would preclude the performance of tasks required by the positions referenced in Dr. Ostrowski's testimony. Furthermore, Dr. El-Attrache believed that Nicholson's inability to work would last for only one month. (R. at 157). In order for a claimant to be "disabled" within the meaning of the Act, both his or her medically determinable impairment (or combination of impairments) and his or her inability to work must last (or be expected to last) for the statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Even if Nicholson can satisfy the Act's

17

twelve-month durational requirement, it is not clear that he could establish an onset of disability as early as August 1, 2006. Dr. Lee listed January 26, 2007, as the first day of Nicholson's "permanent disability." (R. at 208). Dr. Lee's report, of course, postdated Dr. Muna Jabbour's consultative examination. It may be that Nicholson's condition continued to deteriorate subsequent to the examination. These issues should be explored on remand. In accordance with the decision of the United States Court of Appeals for the Third Circuit in *Thomas v. Commissioner of Social Security*, 625 F.3d 798, 801 (3d Cir. 2010), Nicholson must be afforded "an opportunity to be heard" during the course of the upcoming administrative proceedings.

The Court expresses no opinion as to whether Nicholson is statutorily disabled. The need for further administrative proceedings based on the ALJ's underinclusive hypothetical question makes it unnecessary for the Court to determine whether the ALJ properly evaluated Nicholson's subjective complaints of pain. (ECF No. 10 at 11-13). Since Nicholson's claim must be reconsidered in any event, it suffices to remind the Commissioner that evidence establishing the existence of a medical condition that could reasonably be expected to produce pain triggers his obligation to give serious consideration to a claimant's subjective complaints of disabling pain, even if the documentary record contains no explicit reference to the pain

itself. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993).

**VI. Conclusion**

The final decision of the Commissioner is not "supported by substantial evidence." 42 U.S.C. § 405(g). Therefore, the Court will deny the Commissioner's motion for summary judgment (ECF No. 11), deny Nicholson's motion for summary judgment (ECF No. 9) to the extent that it requests an immediate award of benefits, and grant Nicholson's motion for summary judgment to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further proceedings.

AND NOW, this 22nd day of July, 2011, IT IS HEREBY ORDERED that the motion for summary judgment filed by the Defendant (*ECF No. 11*) is **DENIED**, and that the motion for summary judgment filed by the Plaintiff (*ECF No. 9*) is **DENIED** to the extent that it requests a judicially-ordered award of benefits but **GRANTED** to the extent that it seeks a vacation of the final decision of the Commissioner of Social Security, and a remand for further administrative proceedings. The decision of the Commissioner of Social Security is hereby **VACATED**, and the case is remanded to him for further proceedings consistent with this opinion.

BY THE COURT:

/s/ Gary L. Lancaster

Gary L. Lancaster
Chief United States District Judge

19